## Byberg v. Lyman Felheim Company et al.

*William W. Knox*, for plaintiff.

*Marsh, Spaeder, Baur & Spaeder* and *Thomas E. Doyle*, for defendants.

LAUB, J., December 17, 1951.—Two matters are before us at this time. One is a petition for the inspection of certain books and records of defendants and the other is a request for admissions as to documents. We shall first dispose of this latter matter.

Plaintiff, on September 29, 1951, served defendants with a request that they admit the authenticity, correctness, execution, delivery and receipt of certain documents not necessary to describe here. Defendants, on October 24, 1951, filed an answer under oath explaining why an admission could not be made concerning the documents and objecting to the relevancy of the same as evidence. The request for admissions was made under Pa. R. C. P. 4014 which, in clause (*b*), provides that the documents will be deemed admitted unless the adverse party file an answer explaining why the matters cannot be admitted or denied or objecting to the relevancy or competency of the matter as evidence. The rule makes no provision for any action on the part of the court, leaving the inference that the moving party has the right to have the requested matters treated as admitted at trial unless the other party comply with the provisions of the rule. It will be noted that the answer filed in this case does not meet the requirements that it be filed within 10 days after service; however, plaintiff stipulates that an extension had been granted to defendants to file the answer at a later date. Under these circumstances it would appear

that the rule has been insulated by defendants' action in filing an answer and plaintiff is put upon proof as obtained under previous practice. No action is required of us at this time.

The more perplexing question before us is whether plaintiffs are entitled to the inspection prayed for. The pertinent guide is Pa. R. C. P. 4009, which provides that we may order an inspection in proper cases. The limitations upon the right are stated in Pa. R. C. P. 4011 and this is the rule which defendants invoke in their contest of plaintiff's request. In brief, defendants maintain that inspection is sought in bad faith and would cause unreasonable annoyance, embarrassment, expense and oppression. They further allege that the facts are already known to petitioner and inspection is not necessary to enable petitioner to prepare his pleadings or to prove a prima facie case. These reasons lie within the proscriptions of rule 4011.

The action is in assumpsit for commissions earned by plaintiff. Two counts appear in the complaint. The first count bears upon the following alleged circumstances: On May 1, 1936, and subsequently thereto, defendants were acting as jobber for the Barrett Company products. Defendants persuaded plaintiff to leave his then employment and to undertake the sales of Barrett Company products in the territory comprising northwestern Pennsylvania and western New York. Defendants agreed to pay plaintiff a commission of one percent on all Barrett Company products sold in the above territory through the Lyman Felheim Company as jobber. The complaint alleges that plaintiff acted as salesman for Barrett Company products until November 1, 1948, when a new agreement was entered into; this new agreement being the basis for the second count in the complaint. It is alleged that under the first agreement, defendants paid plaintiff his full commissions until January 1, 1938, when, because of

financial difficulties, payment was suspended. On July 1, 1945, defendants resumed payments to plaintiff and continued making them until January 1948. In the meantime, from January 1, 1938, through November 1, 1948, plaintiff continued selling Barrett Company products through defendant company as jobber. It is plaintiff's contention that there is a balance due him under the first contract of $10,755.77, and his complaint itemizes his sales and the receipts from defendant company in substantiation thereof.

It is obvious that plaintiff is not entitled to an inspection under his first count. He is in possession of all necessary data for the showing of a prima facie case and the fact that his pleading has been prepared in detail indicates that this ground is not available to him. Plaintiff bases his demand for an inspection upon the premise that defendants have denied making the contract and the payments on account which he has alleged in his complaint and that therefore the records of the company are essential proof of the existence of the contract. What is overlooked is the fact that the rule pertains to a prima facie case and not to other substantiating proof. A prima facie case will be made out when plaintiff testifies that the contract was made and offers his records of payments, etc. If defendant company has records showing the existence of a contract or of payments made on account thereof, such records would be valuable to plaintiff in establishing his case, but they are not indispensable in proving a prima facie one. He is therefore relegated to his remedy of subpoena duces tecum or such other remedy as the law provides. Furthermore, to require defendants to produce records which are upward of 16 years old and to permit plaintiff to make copies would be an undue hardship upon defendants, in view of the peculiar circumstances of this case. What plaintiff wants is a

record, including canceled checks, of payments made to *him* during the period in question. These he has already pleaded and in any event the presumption is that he is in possession of such details. Rule 4011 (*c*) (3) is particularly applicable to such cases.

Turning now to the second count, we find that this alleges the making of a new agreement between the parties on November 1, 1948. Under this agreement, plaintiff ceased to be the Barrett Company representative and became, instead, the representative of Bona Fide Genasco, Inc. Plaintiff was to receive, however, commissions of two and one half percent on all Barrett Company products sold through defendants as jobber. This contract was lived up to by defendants until November 29, 1950, when defendants refused to pay the commissions. It is alleged that defendants have sold Barrett Company products to an undetermined amount and that plaintiff is entitled to a commission upon such sales.

It appears, therefore, that plaintiff is entitled to inspect defendants' books with relations to Barrett Company sales from November 29, 1950, in order to establish his claim. In this respect he has been unable to prepare his pleading and has been forced, through necessity, to plead in general terms his belief that the sales amounted to $7,500 a month. No prima facie case of the amount due can be presented without showing that sales actually were made through defendant company.

### Order

And now, to wit, December 17, 1951, defendants are directed to produce for plaintiff's inspection all records and documents in their possession which will disclose their sales of Barrett Company products from November 29, 1950, to date, or the sales through them as jobber of these products for that period. If defendants claim that no sales of Barrett Company products

have been made by them or through them as jobber, then defendants are directed to produce all pertinent records wherein are kept all records of sales through defendant company either as jobber or otherwise. Plaintiff is to be afforded the right to copy or photograph any record so produced, provided however, satisfactory proof shall be produced to this court in advance thereof showing the necessity for such copying or photographing. This matter shall remain open until plaintiff has concluded his inspection and either party may apply to the court at any time in the interim for clarification of the rights granted hereunder.